**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Brian TANOUE, Defendant–Appellant.**

No. 95–15436.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1996.

Decided Sept. 6, 1996.

Richard P. McClellan, III, Honolulu, Hawaii, for defendant-appellant.

John A. Dudek, Jr., United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before CHOY, O'SCANNLAIN and LEAVY, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether an employee may be compelled to provide handwriting exemplars during the investigation of his employer by the Internal Revenue Service.

I

Brian Tanoue appeals the district court's order enforcing an Internal Revenue Service ("IRS") summons requiring him to submit handwriting exemplars in order to determine if Tanoue prepared .tax returns for his employer, David Chang, for 1991 and 1992.

The IRS is conducting a criminal tax investigation of Chang and his business, Fortune Design Collections, Inc., for tax years 1988–92. Tanoue was an employee of Fortune Design and may have provided accounting

services to the corporation for tax years 1991–92. In an interview during the course of the investigation of Chang, IRS Special Agent John Teraoka informed Tanoue that he was not a "target" of the investigation, but a "witness," and subsequently asked Tanoue if he participated in Fortune Design's or Chang's accounting affairs. Refusing to answer, Tanoue invoked his Fifth Amendment privilege against self-incrimination.

For purposes of his investigation, Teraoka determined that he needed to learn the identity of the person whose handwriting appears on the tax returns and bookkeeping records. Specifically, Teraoka stated that identifying the preparer of the returns is necessary "to properly investigate the federal income tax liability of David Chang, including whether any criminal violations of the internal revenue laws have occurred." Accordingly, he issued a summons to Tanoue to obtain handwriting exemplars. When Tanoue refused to provide the exemplars, the IRS filed a petition to enforce the summons.

Following a non-evidentiary hearing on October 27, 1994, Magistrate Judge Barry M. Kurren entered an order on December 14, 1994, recommending enforcement of the summons. Magistrate Judge Kurren concluded that the IRS had demonstrated a good faith basis for the summons and had established a prima facie case for enforcement. The district court adopted Magistrate Judge Kurren's ruling for enforcement on February, 16, 1995. Tanoue filed a timely notice of appeal, and a motion for a stay of the enforcement order pending the appeal.

On March 8, 1995, the government filed a petition for an order to show cause as to why Tanoue should not be held in contempt for his refusal to comply with the court's order, and on April 4, 1995, the district court issued the order to show cause. On July 3, 1995, the court denied both Tanoue's motion for a stay of the enforcement order and the government's petition to hold Tanoue in contempt. At a status conference on July 7, 1995, the court ordered Tanoue to produce ten copies of handwriting exemplars or be held in contempt of court and fined $1,000 per day from July 27, 1995. Tanoue subse-quently complied with the court's order by producing handwriting exemplars.

## II

As a threshold matter, we conclude that Tanoue's compliance with the IRS summons has not rendered his appeal moot.

The Supreme Court has held that an appeal must be dismissed as moot if an event occurs while the appeal is pending that makes it impossible for the appellate court to grant " 'any effectual relief whatever' " to the prevailing party. *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)); *see also Calderon v. Moore,* —— U.S. ——, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996). Here, as in *Church of Scientology,* meaningful relief is available in the form of an order directing the government to return the summoned materials and to destroy any copies in the government's possession. *Id.* at 12–16, 113 S.Ct. at 450–51. Accordingly, Tanoue's appeal is not moot.

## III

When seeking enforcement of an IRS summons, the government must establish that its investigation will be conducted pursuant to a legitimate purpose, and that its inquiry may be relevant to that purpose. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). In turn, the party resisting enforcement must disprove through facts and evidence the presumed relevance and purpose of the summons.

On appeal, Tanoue contends that (1) the information requested in the summons was irrelevant to the IRS's purported purpose; (2) the IRS's actual purpose was to compel him improperly to incriminate himself; and (3) his designation as a "witness" for purposes of the summons was a calculated maneuver to circumvent both his Fourth Amendment privilege against unreasonable searches and seizures, and his due process rights under the Fifth Amendment and the

IRS's regulations and operating procedures. We are not persuaded.

■ First, in order to establish legitimate purpose and relevance, the government need only make a "minimal" showing that its motive for the investigation is to inquire into an offense "connected with the administration or enforcement of the internal revenue laws," and that the summoned material may be relevant to that inquiry. 26 U.S.C.A. § 7602 (West 1989); *United States v. Abrahams*, 905 F.2d 1276, 1280 (9th Cir.1990). Assertions by affidavit of the special agent assigned to the case that the summoned exemplars might identify the target's tax preparer, and that such identification is necessary to the investigation are sufficient to satisfy this minimal showing. *Liberty Financial Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir.1985); *see United States v. Ryan*, 455 F.2d 728, 733 (9th Cir.1971) (summoned material is relevant if IRS can show that it could potentially "throw light upon the correctness of the taxpayer's returns"). Because Special Agent John Teraoka submitted an affidavit to that effect, the government satisfied its prima facie showing.

■ Second, Tanoue's contention that the summons was issued for the improper purpose of requiring him to implicate himself in criminal conduct is baseless. Although Tanoue alleges that inquiry into Chang's tax liability was merely a pretense for the summons, he fails to present facts or evidence that such inquiry was not in truth an IRS objective. Moreover, even if the IRS concurrently had intended that production of the exemplars would result in Tanoue's becoming a target, Tanoue is in error in presuming that such intent is improper. In *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985), the Supreme Court held that a summons may be issued for the "dual purpose" of investigating the liability of the target taxpayer as well as unnamed parties as long as the summons is relevant to a legitimate investigation, as was the case here. *Id.* at 324, 105 S.Ct. at 732. Furthermore, because the production of handwriting exemplars does not implicate the Fifth Amendment privilege against self-incrimination, Tanoue's argument that the true motive for the summons was to compel him to incriminate himself is of no consequence. *United States v. Euge*, 444 U.S. 707, 718, 100 S.Ct. 874, 881–82, 63 L.Ed.2d 141 (1980).

■ Third, we reject Tanoue's contention that his designation in the summons as a "witness" was a calculated maneuver to circumvent his Fourth Amendment privilege against unreasonable searches and seizures and his due process rights under both the Fifth Amendment and IRS regulations. The Supreme Court has held that the compulsion of handwriting exemplars is not a search and seizure subject to Fourth Amendment protections. *Id.; United States v. Mara*, 410 U.S. 19, 21–22, 93 S.Ct. 774, 775–76, 35 L.Ed.2d 99 (1973). In addition, because Tanoue had adequate opportunity to present any defenses to enforcement that he wished, and in fact compelled the IRS to petition the district court for enforcement of the summons, the summons did not occasion a denial of due process under the Fifth Amendment. *See Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611–12, 75 L.Ed. 1289 (1931) (due process is not denied where there is adequate opportunity for a later determination of legal rights); *see also Keado v. United States*, 853 F.2d 1209, 1214 (5th Cir. 1988) ("Procedures or rules adopted by the IRS are not law.").

In sum, Tanoue has failed to carry his "heavy" burden of disproving the presumed relevance and purpose of the summons. *Liberty Financial Servs.*, 778 F.2d at 1392.

IV

Finally, we are not persuaded by Tanoue's contention that the district court abused its discretion in denying his request for an evidentiary hearing.

■ This court has held that an evidentiary hearing need not be ordered by the district court unless the party resisting enforcement of the summons first provides a "minimal amount of evidence" that the summons was not issued for any legitimate purpose. *United States v. Stuckey*, 646 F.2d 1369, 1372 (9th Cir.1981), *cert. denied sub nom. Weinstein v. United States*, 455 U.S.

942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982). In particular, such a showing requires that the party provide specific facts and evidence, and not mere "conclusory allegations," that the summons was issued in bad faith. *United States v. Church of Scientology of California,* 520 F.2d 818, 824–25 (9th Cir.1975). If, by such facts and evidence, the party is able to raise sufficient doubt about the government's motive for issuing the summons, the district court must hold a limited evidentiary hearing "to determine whether further inquiry into the Service's purposes by way of discovery is warranted." *Id.* at 825.

 Tanoue's four allegations of bad faith fail to raise sufficient doubt about the government's purpose in seeking enforcement of the summons. First, Tanoue contends that bad faith should have been inferred from the fact that the IRS sought exemplars from him when he is neither a "target" nor a "subject" of the Chang investigation. This contention is invalid because the government has shown that the exemplars are at least potentially relevant to the legitimate investigation of Chang's tax liability. *Liberty Financial Servs.,* 778 F.2d at 1392.

Second, Tanoue alleges that bad faith was evidenced by Special Agent Teraoka's unauthorized and "surreptitious" interview of Tanoue; this contention fails because this court has held that district courts cannot order that interviews be held in the presence of the target or his attorney. *Abrahams,* 905 F.2d at 1286–87.

Third, Tanoue alleges that bad faith was demonstrated by the government's alleged statements to Tanoue that only a person with something to hide would invoke his Fifth Amendment privilege and that such privilege would be overcome by a summons. This allegation is without merit because the Supreme Court has held that compelling a witness to provide handwriting exemplars in a summons enforcement proceeding does not violate the witness' Fifth Amendment privilege. *Euge,* 444 U.S. at 718, 100 S.Ct. at 881–82.

Fourth, Tanoue contends unpersuasively that bad faith can be inferred from the government's service of the petition to enforce the summons on Tanoue without notice to his attorney. In short, the IRS cannot be blamed for acting in bad faith simply because Tanoue failed to contact his attorney after being served.

## V

For the foregoing reasons, we affirm the district court's decision enforcing the summons and denying an evidentiary hearing.

**AFFIRMED.**